IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Sumter County School District 17, ) | C/A No. 03:07-1357-JFA |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | ORDER |
| Joseph Heffernan and May Baird, on ) | |
| behalf of their son, T.H., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

This case arises under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq., and comes before the court on the parties' cross motions for judgment on the administrative record. The court notes that neither party has sought to submit evidence beyond the record of the state administrative proceedings.

Plaintiff Sumter County School District 17 ("District") initiated this action pursuant to 20 U.S.C. § 1415(i)(2), as a party aggrieved by a final administrative decision concerning a student with a disability. Defendants are Joseph Heffernan and May Baird ("Parents"), acting on behalf of their son, T.H. ("Student"), a child with autism.

I.      Procedural Background

Parents initiated the underlying administrative due process case in the fall of 2006, challenging the sufficiency of an individualized education program ("IEP") developed by the District for Student. The Local Hearing Officer ("LHO") conducted a due process hearing

1

on December 5 and 6, 2006, and issued a decision on December 18, 2006. Although the LHO found the implementation of the IEP to have been inadequate, he ultimately denied Parents' request for a home-based placement. Parents appealed the LHO's decision and requested a home-based placement for Student until such time that the District "has assembled and implemented a program capable of providing ABA ["applied behavioral analysis"] services as required and set forth in [Student]'s IEP."

The State Reviewing Officer ("SRO") granted Parents' appeal, and issued a decision finding the implementation of the IEP was inadequate, reversing the LHO's denial of a home-based placement, and determining that the stay-put placement would be Student's home-based placement. The SRO remanded the case to the LHO for a determination of the specific services to be provided, including compensatory services. However, prior to remand, the District sought to overturn the SRO's decision by way of this appeal in federal district court.

I.  Discussion

   A.  Standard of Review

In a proceeding under the IDEA, the court conducts a modified de novo review, giving "due weight" to the underlying administrative proceedings. Board of Education v. Rowley, 458 U.S. 176, 206 (1982); Doyle v. Arlington County Sch. Bd., 953 F.2d 100, 103 (4th Cir.1991) ("Generally, in reviewing state administrative decisions in IDEA cases, courts are required to make an independent decision based on a preponderance of the evidence, while

giving due weight to state administrative proceedings"). Federal courts do not, however, "substitute their own notions of sound educational policy for those of local school authorities." Hartmann v. Loudoun County Bd. of Educ., 118 F.3d 996, 999 (4th Cir. 1997).

B.     IDEA Requires Free Appropriate Public Education

Under the IDEA, all states receiving federal funds for education must provide disabled schoolchildren with a "free appropriate public education" ("FAPE"). 20 U.S.C.A. § 1412(a)(1)(A). Congress enacted the IDEA "to ensure that all children with disabilities have available to them a [FAPE] that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C.A. § 1400(d)(1)(A).  A FAPE "consists of educational instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child to benefit from the instruction." Rowley, 458 U.S. at 188–89 (internal quotation marks omitted).  The Fourth Circuit has determined that the appropriate education required by the IDEA should not be confused with the

> best possible education ... [a]nd once a FAPE is offered, the school district need not offer additional educational services. That is, while a state must provide specialized instruction and related services sufficient to confer some educational benefit upon the handicapped child, the Act does not require the furnishing of every special service necessary to maximize each handicapped child's potential.

MM ex rel. DM v. School Dist., 303 F.3d 523, 526–27 (4th Cir. 2002) (internal citations omitted).

A school provides a FAPE by developing an IEP for each disabled child. Appropriate

3

IEPs "must contain statements concerning a disabled child's level of functioning, set forth measurable annual achievement goals, describe the services to be provided, and establish objective criteria for evaluating the child's progress." MM, 303 F.3d at 527; see also 20 U.S.C. § 1414(d)(1)(A).

Although the IDEA does not require that a state provide the best education possible, "Congress did not intend that a school system could discharge its duty under the [Act] by providing a program that produces some minimal academic advancement, no matter how trivial." Hall ex rel. Hall v. Vance County Bd. of Educ., 774 F.2d 629, 636 (4th Cir.1985).

C.   Student's IEPs

At the time of the due process hearing, Student was twelve years old and had been placed in the District's self-contained class for autistic students at Bates Middle School ("Bates") during the 2005–2006 and 2006–2007 school years. Parents removed Student from Bates in late September 2006 and thereafter had instruction provided for him at home.

Student's IEPs required provision of the ABA approach to teaching autistic children. The ABA approach is a form of the Lovaas methodology, which "relies heavily on extremely structured teaching and comprehensive data collection and analysis." Deal v. Hamilton County Bd. of Educ., 392 F.3d 840, 845-46 (6th Cir. 2004); see also G v. Fort Bragg Dependent Sch., 343 F.3d 295, 300 n. 6 (4th Cir. 2003). The central component of the Lovaas-ABA methodology is "discrete trial" training or therapy, which "involves breaking down activities into discrete tasks and rewarding a child's accomplishments." MM, 303 F.3d

at 528 n. 8. Research has indicated that early intervention with ABA methods can be very successful in teaching autistic children. See Deal, 392 F.3d at 845 n. 2.

The IDEA requires the district court to "receive the records of the administrative proceedings," 20 U.S.C.A. § 1415(i)(2)(C)(i), an obligation that "carries with it the implied requirement that due weight shall be given to these proceedings." Rowley, 458 U.S. at 206. The Fourth Circuit has interpreted Rowley's "due weight" requirement to mean that the findings of fact made in the state administrative proceedings must "be considered prima facie correct, akin to the traditional sense of permitting a result to be based on such fact-finding, but not requiring it." See Doyle, 953 F.2d at 105.

In this case, there is nothing in the record suggesting that the LHO's process in resolving the case was not ordinary. The LHO conducted a proper hearing, allowed the parents and the District to present evidence and make arguments, and the LHO by all indications received the facts in the normal way. However, the court finds that the legal conclusions of the LHO do not logically flow from his factual findings, and are therefore not entitled to deference. Springer v. Fairfax County Sch. Bd., 134 F.3d 659, 663 n.* (4th Cir.1998) (concluding that Doyle did not require that deference be given to the opinion of the LHO over that of the SRO in part because the decision of the LHO officer was "both cursory and conclusory" and thus was properly rejected by the SRO).

The hearing officers and the court apply the two-step Carter-Burlington analysis in determining whether Parents demonstrated (1) that the District has violated the IDEA, and

(2) that private placement is proper under the Act. School Comm. of Burlington v. Department of Ed., 471 U.S. 359 (1985); Florence County School District Four v. Carter, 510 U.S. 7 (1993). Parents submit that the District violated the IDEA by failing, inter alia, to provide Student with appropriate ABA therapy in accordance with his IEP.

D.     Legal Analysis

Parents appealed the LHO's conclusions of law as to both prongs of the Carter-Burlington analysis, and the SRO agreed with Parents that Student's placement at Bates violated the IDEA and that Student's private placement is appropriate, thereby reversing the LHO's conclusions and ruling that the appropriate stay-put placement for Student is a home-based placement until such time that the District can establish that it has an appropriate placement for him at Bates. For the reasons that follow, this court agrees with the SRO.

i.     The District Violated the IDEA by Failing to Provide Student a FAPE

The record is undisputed that the District failed to comply with Student's IEPs. Student's 2005–2006 IEP required 15 hours per week of ABA therapy by the District's therapists and required assignment of a shadow for Student for 8.3 hours per week, during related arts and lunch, when he was to be mainstreamed with non-disabled students at Bates. As the District concedes and the LHO found, "[i]t is uncontroverted that [Student] did not receive the 15 hours per week of ABA therapy required in his IEP but instead received, at most, 7.5 to 10 hours per week. Some of that may have been spent attempting to address the detrimental effects of the inappropriate ABA therapy which had been provided during the

fall of 2005." (LHO Order ¶ 6). Specifically, as the LHO found, during the 2005 fall semester, the staff in the autistic class observed Student engaging in certain self-stimulatory behaviors like face wiping, which caused bleeding, and biting himself and others. (LHO Order ¶ 13). The LHO provided the following findings:

> The staff who worked with [Student] during the Fall of the 2005–2006 school year believed that [Student]'s behavior was likely triggered by instruction sessions that were too lengthy. The Parents and some of their witnesses certified in ABA therapy felt that more intensity was needed to implement the ABA therapy for [Student] and to "undo the damage" they felt he had received for the failure to implement properly [Student]'s ABA therapy. [Student] had been exhibiting self-stimulatory behavior of face wiping causing him to bleed and his father would be required to bring clean shirts to school to replace those which had become blood soaked. The District asserted [Student]'s symptoms were consistent with his severity of autism and possibly as a result of a traumatic brain injury (TBI) but the Parents and some of their witnesses indicated these were symptoms consistent with inappropriate application of ABA.

(LHO Order ¶15).

Dissatisfied with the ABA therapy, or lack thereof, being provided to Student, Parents briefly removed him from school in December 2005, in order to seek an alternative medical treatment. (LHO Order ¶16). Parents returned Student to Bates during the spring semester of the 2005–2006 school year, where a newly hired teacher, Ms. Cassandra Painter, administered ABA therapy to Student pursuant to his IEP. (LHO Order ¶18 – 23). Student appeared to make progress under the tutelage of Ms. Painter. Id. Ms. Painter is a Board Certified Associate Behavioral Analyst and as such, underwent intensive training in ABA therapy. (LHO Order ¶17). As the LHO found, Ms. Painter also provided Extended School

Year services to Student over the summer of 2006, but at times she did not receive para-professional support, rendering her incapable of providing Student with the full 15 hours of ABA therapy required by his IEP. (LHO Order ¶24). Ms. Painter "never fully completed the planned classroom portion of her training, as she resigned from the District in early August 2006." (LHO Order ¶23).

The District's 2006–2007 IEP for Student required 27.5 hours per week of ABA therapy beginning in August 2006, together with 1.25 hours per week of contact with typically-developing peers. The District hired Sharon James, a certified special education teacher, to work at Bates beginning in August 2006. As the LHO noted, Ms. James "readily admitted that she does not feel confident to provide ABA services." (LHO Order ¶29). Ms. James's testimony follows:

> A:   I wasn't giving the structured ABA, but I was giving parts of ABA to him.
> Q:   You were giving components of ABA therapy to him?
> A:   Yes, sir.
> Q:   But the structured ABA program, he was not getting 27 ½ hours of that every week from the first day of school in this academic year, was he?
> A:   The structured ABA program? No, sir.

(DPR 0647:4-14).

Ms. Keiya Williams, one of the para-professionals in Student's classroom, admitted she neither fully understands ABA therapy nor is comfortable providing it to Student as required under his IEP:

> Q:   Is it fair to say that today, as you sit here today, you still haven't had enough exposure to it and enough training to be able to do ABA therapy with students by yourself?

8

> A: No, I wouldn't. I wouldn't, I wouldn't say that much, no.

(DPR 1021:6-11).

Ms. Frances Beasley, another para-professional in Student's classroom, also testified that she was not qualified to provide ABA therapy services:

> Q: We have been talking about a very structured, a very precise program known as ABA therapy. Not techniques, a very precise program.
> A: Okay.
> Q: As we sit here today, you're not qualified to implement that program?
> A: I am not qualified to implement that program.

(DPR 1175:17-1176:10).

Ms. Leslie Boykin, another para-professional in Student's classroom, also testified that she did not have adequate training or supervision to provide Student with a structured ABA program as required by his IEP:

> Q: My question simply is this. If you are asked to participate in delivering a structured ABA program to [Student] today, that's not something you feel qualified to do, do you?
> A: No.
> Q: In order for you to do that, you're going to have to receive a good bit more training, aren't you?
> A: Yes, sir.
> Q: And you're going to also have to have somebody in the classroom that is assisting you as you begin to learn how to do that, is that correct?
> A: Yes, sir.

(DPR 1057:7-18).

Additionally, the LHO noted Ms. James's testimony that when Student was in her classroom, he would spend fifty percent of his time running around the room and that the teachers in the classroom would attempt to lure him back to the table with candy or some

9

other reward. (LHO Order ¶29; DPR 0597:2–5). Ms. Rebecca Keeney, a Board Certified Behavior Analyst who worked with Mr. Cole and observed Student's classroom, indicated in her testimony that this reflects an inappropriate application of ABA therapy. (LHO Order ¶29; DPR 0768:14–18). Ms. James also admitted yelling at Student despite knowing that autistic children are sensitive to certain noises and can become very agitated by loud sounds. (DPR 0608:1-15).

As the LHO found, "[t]his testimony makes it fairly easy to see how the inappropriate application of ABA therapy could ultimately be detrimental to a child and result in a child's continuing to develop inappropriate behaviors." (LHO Order ¶29). The LHO noted that:

> Ms. James testified that her goal with regard to mands was to try to have [Student] state 20 to 50 mands per day. Jay Cole indicated that the goal in an ABA program for an autistic child such as [Student] should be somewhere in the neighborhood of 300 to 500 mands per day (he also testified that a typically developing child uses approximately 1000 mands per day). The development of mands is an essential component of ABA therapy in that there must be a significant acquisition of mands before other skills are developed.
>
> The Parents contend that [Student] regressed during the fall semester of the 2006–2007 school year because James initially was not trained in ABA therapy. The Parents also contend that James was abusive to [Student] during the time that she served as [Student]'s teacher, also resulting in a denial of FAPE.[1]

(LHO Order ¶¶29–30).

---

[1] For the purposes of their appeal, Parents do not rely on the alleged abuse by Ms. James as a factor in the District's denial of FAPE. The court recites this portion of the LHO's Order only as far as it influenced the Parents' decision to withdraw Student from Bates in September 2006.

The nature of the therapy provided by the District does not appear to comport with the definition and description of ABA therapy recited above and required by Student's IEP. ABA therapy "relies on extremely structured teaching and comprehensive data collection and analysis." See Deal, 392 F.3d at 845–46. Ms. James admitted not giving "structured ABA" to Student, and there is no evidence in the record that Student received any structured ABA therapy aside from that rendered by Ms. Painter before she resigned in early August 2006. Furthermore, the District failed to present any evidence of the "comprehensive data collection and analysis" used in ABA therapy. According to the LHO, Ms. Painter herself testified that she did not think the teachers and staff understood how to instruct ABA, and that they collected trial by trial data, but did not understand how to analyze it. (LHO Order ¶23; DPR 0852:5–22).

The LHO notes repeatedly that the teachers at Bates were "well-intentioned," but the court finds such repeated characterization to be irrelevant at best, and worse, confusing the issues. As the LHO recognized, the Student's IEP called for ABA therapy, "not an attempt at ABA therapy or an ABA-type methodology." (LHO Order ¶4, p. 20). The LHO found, and the court agrees, that the District denied Student a FAPE by "actual testimony, some data and circumstantial evidence of the admitted inconsistency of the ABA part of the District's special education program (approximately three different ABA teachers and three different ABA consultants over a year and a half) and the admitted lack of confidence in themselves to teach properly ABA therapy by Ms. James, Ms. Williams, Beasley and Boykin. The fact

that James destroyed the data collected reaffirms the lack of institutional control." (LHO Order ¶9, p. 22).

The court finds that the District failed to fulfill its obligation to provide Student with a FAPE.

      ii.    The LHO Incorrectly Concluded that a Home-Based Placement is Not Proper Under the IDEA

The court finds that the LHO did not properly apply the standard for Student's proposed home-based placement. In reciting the burden of proof, the LHO stated that Parents must prove that (1) the District's placement in inappropriate under the IDEA, and (2) the proposed placement is appropriate under the IDEA. (LHO Order ¶14, p. 25). The LHO stated that "[t]his includes proof that the proposed placement is the Least Restrictive Environment under the IDEA." Id. Conversely, the SRO held that the LRE does not apply to private placements. (SRO Order, p.17–18.)

The court finds that the SRO's analysis of the home-placement issue more accurately states the applicable standard. The Fourth Circuit has repeatedly expressed "strong doubt" as to whether the "least restrictive environment" requirement applies to private placements. Morgan v. Greenbrier County Bd. of Educ., 83 Fed.Appx. 566, 572, 2003 WL 23018559, *5 (4th Cir. 2003) (Williams, J., concurring in part, dissenting in part); Carter v. Florence County, 950 F.2d 156, 160–163 (4th Cir. 1991), aff'd 510 U.S. 7 (1993). As noted by Parents, Congress intended that the IDEA's preference for mainstreaming prevent schools

from segregating disabled students from the general student body, not to restrict parental options when the public schools fail to comply with the requirements of the Act. Carter, 950 F.2d at 160.

The court finds the principal inquiry is whether the private placement is "reasonably calculated to enable the child to receive educational benefits." Id. at 163. The record supports the SRO's holding that the home-based placement provides Student with educational instruction "tailored to the unique needs of a handicapped child," supported by such services as are necessary to "assist a handicapped child to benefit from special education." Rowley, 458 U.S. at 188.

The record reflects testimony from Student's mother, a board certified behavior analyst[2] who designs programs for autistic children and who has "a keen awareness of the educational needs of a child with Student's special needs." (SRO Order, p.19; DPR 0901–0903, 0098–0099). Student works with an experienced ABA line therapist five days per week for approximately thirty hours per week, (DPR 0929, 0931, 0945), and Student "has made improvements in terms of educational progress as well as in terms of his behavior." (SRO Order, p.18; DPR 0930–0931, 0098–0099). District has not disputed that Student is

---

[2] The District parenthetically disputes the certification in its memorandum in opposition to Parents' summary judgment motion (p.4), but does not cite any support in the record for its contention. As the SRO recognized, expert testimony from individuals with professional qualifications is not necessary to establish that progress has been made, citing Jaynes v. Newport News School Board, 13 Fed. Appx. 166, 173 n.7 (4th Cir. 2001), but that Student's mother was well-qualified to testify as to educational progress. (SRO Order, p. 18).

learning more, appears very happy, and has not been engaging in harmful facewiping as he did while enrolled at Bates. As well, the home-placement has ensured that no dietary accidents occur, (SRO Order, p. 18; DPR 0976–0977, 0098), while providing him the opportunity to interact with other children within the community and at lakes and playgrounds. In sum, the court finds that the home-based placement is an appropriate stay-put placement until, as the SRO found, the District proves it has an appropriate ABA therapy program. (SRO Order, p. 19).

For the foregoing reasons, the court affirms the decision of the SRO and dismisses the District's claims. Pursuant to 20 U.S.C. § 1415(i)(3)(B), the court awards Parents their reasonable attorneys' fees and costs, as the prevailing party under the IDEA, and directs Parents to submit an affidavit of attorneys fees and bill of costs.

IT IS SO ORDERED.

July 17, 2009  
Columbia, South Carolina

Joseph F. Anderson, Jr.  
United States District Judge